1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION


UNITED STATES OF AMERICA            )
                                    )
        vs.                         )
                                    )          CASE NO.
HERMAN WILLIAMS,                    )   4:18-CR-00147-LGW-CLR-2
                                    )
_____Defendant._____ )



RULE 11 PROCEEDING
BEFORE THE HONORABLE LISA GODBEY WOOD
May 31, 2019; 1:12 p.m.
Savannah, Georgia

APPEARANCES:

For the Government:        CHRISTOPHER HOWARD, Esq.
                           U. S. Attorney's Office
                           22 Barnard Street
                           Suite 300
                           Savannah, Georgia  31412
                           (912) 652-4422
                           christopher.howard@usdoj.gov


For the Defendant:         THOMAS A. WITHERS, Esq.
                           Gillen, Parker & Withers, L.L.C.
                           8 East Liberty Street
                           Savannah, Georgia  31401
                           (912) 447-8400
                           twithers@gwllawfirm.com


Reported by:               Debbie Gilbert, RPR, CCR
                           Official Court Reporter
                           801 Gloucester Street
                           Post Office Box 1894
                           Brunswick, GA 31521-1894
                           (912) 262-2608 or (912) 266-6006
                           debra_gilbert@gas.uscourts.gov
                            - - -

2

1                    P R O C E E D I N G S

2               (Call to order at 1:12 p.m.)

3          THE COURT:  Good afternoon.  Ms. Sharp, call the next

4     case.

5          THE CLERK:  United States of America versus Herman

6     Williams, Chris Howard for the Government, Tom Withers for the

7     Defense.

8          MR. HOWARD:  Government is ready to proceed, Your Honor.

9          MR. WITHERS:  And the Defense is ready, Your Honor.

10          THE COURT:  Mr. Withers, approach with your client, Mr.

11     Herman Williams.

12          Are you Mr. Williams?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  We are here because the United States

15     Attorney and your own attorney say you want to change your plea

16     from not guilty to guilty to a lesser included offense of the

17     count that's currently pending against you in this multi-count

18     multi-defendant federal felony criminal indictment; is that

19     correct?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  The purpose of this proceeding is going to

22     be for me to make a determination of whether you have an

23     understanding of the case as it's presently pending against you.

24          I also want to make sure you understand all the rights

25     and privileges that you waive or give up if I decide to accept

3

1    your plea.

2         I want to make sure there is, in fact, a factual basis

3    for a plea of guilty to that Count 1 lesser included offense and

4    that this is really what you want to do after you've discussed

5    it with Mr. Withers.

6         There will be other things that we take up as we go

7    along this afternoon.  I just want you to know from the

8    beginning this is an important step in your life, not something

9    to take lightly; understand?

10        THE DEFENDANT:  Yes, ma'am.

11        THE COURT:  Now, Mr. Williams, is anybody making you,

12   pushing you, leaning on you to come in here and change your

13   plea?

14        THE DEFENDANT:  No, ma'am.

15        THE COURT:  This is what you want to do?

16        THE DEFENDANT:  Yes, ma'am.

17        THE COURT:  Swear in Mr. Williams.

18                      HERMAN FELIX WILLIAMS,

19   having been first duly sworn, was examined and testified as

20   follows:

21        THE CLERK:  Please state your full name and spell your

22   last name.

23        THE DEFENDANT:  Herman Felix Williams, W-i-l-l-i-a-m-s.

24        THE COURT:  And, Mr. Williams, what's the last four

25   digits in your social security number?

4

1          THE DEFENDANT:  1359.

2          THE COURT:  How old are you?

3          THE DEFENDANT:  44 years old.

4          THE COURT:  Are you married?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Do you have children?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  How old are they?

9          THE DEFENDANT:  My son is 23 years old and my daughter

10   is 22 years old.

11          THE COURT:  Where were you born?

12          THE DEFENDANT:  Savannah, Georgia.

13          THE COURT:  And were you living in Savannah at the time

14   of this arrest?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  Where were you living?

17          THE DEFENDANT:  Conyers, Georgia.

18          THE COURT:  Tell me about your educational background.

19   How far did you go in school?

20          THE DEFENDANT:  I graduated from Herschel Victor Jenkins

21   in 1994 and I've gotten an associate's degree in business.

22          THE COURT:  Which institution did you obtain that from?

23          THE DEFENDANT:  Savannah Tech right there.

24          THE COURT:  And what were you studying?

25          THE DEFENDANT:  Business, business management.

5

1          THE COURT:  And it's an associate's degree?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Tell me about your work history.  What jobs

4    have you maintained?

5          THE DEFENDANT:  Well, I basically manage a seafood

6    restaurant and I import seafood from Savannah to Atlanta.

7          THE COURT:  So is the restaurant that you manage, is

8    that in Conyers or is it in Savannah?

9          THE DEFENDANT:  It's in Stone Mountain, Georgia.

10         THE COURT:  All right.

11         THE DEFENDANT:  Yeah, I stay on the border of Stone

12   Mountain and Conyers right there, tri-county.

13         THE COURT:  Have you ever been diagnosed with any mental

14   or physical disability?

15         THE DEFENDANT:  No, ma'am.

16         THE COURT:  Do you take any medications?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  What do they address?

19         THE DEFENDANT:  Just when I was in this town, high blood

20   pressure medication.

21         THE COURT:  In the last 48 hours, have you had any drugs

22   or alcohol?

23         THE DEFENDANT:  No, ma'am.

24         THE COURT:  Mr. Williams, as you appear before me right

25   now, you're presumed innocent, and what that means is the

6

1   Government is your accuser, and as such they have to prove that

2   you're guilty, and they have got to do that by bringing forth

3   proof of guilt beyond a reasonable doubt.  You as the defendant

4   don't have to prove anything; understand?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Also know the indictment that was filed

7   against you and these others that set forth the charges, that's

8   not evidence.  That's simply what the grand jury and the US

9   Attorney accuse you of having done but it's not evidence;

10  understand?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Now, Mr. Withers, are you appointed or

13  retained?

14         MR. WITHERS:  I'm retained, Your Honor.

15         THE COURT:  Mr. Williams, that means you have selected

16  Mr. Withers as the attorney of your choice; is that correct?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  I do want you to know that if you should

19  ever become unable to afford an attorney, then you would be

20  entitled to have one appointed to represent you throughout this

21  and every other phase of your case at no charge to you;

22  understand?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Also know you don't have to plead guilty.

25  If you want to persist in a plea of not guilty, you're entitled

7

1  to do that.  If you were to persist in a plea of not guilty, you

2  would be entitled to a public and speedy trial by jury.

3          During that jury trial, a number of rights would belong

4  to you.  The presumption of innocence that we talked about, that

5  would follow you throughout the trial.  Your right to an

6  attorney and one at no charge if you couldn't afford one, that

7  would follow throughout the trial.

8          You would have the right to see, hear, confront and

9  cross-examine any witness the Government might call.  You would

10  have the right to see all their evidence.

11          For your own part, you would have the right to put up

12  evidence if you wanted.  You would have the right to call

13  witnesses and use subpoenas from the court to make them appear.

14          You would have the right to take the stand and testify,

15  subject yourself to cross-examination by the US Attorney, but

16  you would also have the right to go to trial and remain silent,

17  and if you elected to proceed in that fashion, nobody could call

18  any negative attention to your silence in front of the jury.

19  That is, after all, a constitutional right; understand?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Do you understand that if you plead guilty

22  and I decide to accept that plea, then you will have waived,

23  that is, given up all the rights that are associated with a

24  trial by jury.  In fact, there will be no trial of any kind.

25  Essentially what will remain of your case is the sentencing

8

1    phase; understand?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  Do you have any questions about the waiver

4    of those rights?

5         THE DEFENDANT:  No, ma'am.

6         THE COURT:  Well, have you and Mr. Withers had the

7    opportunity to talk about the facts and the law as they pertain

8    to your case?

9         THE DEFENDANT:  Yes, ma'am.

10        THE COURT:  Has he gone over with you this indictment

11   that was filed?

12        THE DEFENDANT:  Yes, ma'am.

13        THE COURT:  Have you and he gone over together this plea

14   agreement you're proposing?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Has he discussed with you at least generally

17   the federal sentencing guidelines?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  Are you satisfied with his representation?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  Any complaints about it whatsoever?

22        THE DEFENDANT:  No, ma'am.

23        THE COURT:  Although I understand that you and Mr.

24   Withers have gone through the indictment together, it is my

25   obligation to cover it with you as a part of this proceeding.

9

1   It is a superseding indictment.  It alleges just one count

2   against you, and let me cover the count as it presently stands.

3         Count 1 alleges conspiracy to possess with intent to

4   distribute and to distribute controlled substances, that is,

5   cocaine and marijuana in violation of 21 USC Section 846.

6         Specifically, it alleges that beginning in February of

7   2014 up to April of 2018 in Chatham County and Bryan County,

8   which are in the Southern District of Georgia, and then also in

9   the Northern District of Georgia and the Southern District of

10  Texas, you, who it alleges is also known as Unc, and these other

11  individuals named are alleged to have knowingly and

12  intentionally conspired to possess with intent to distribute and

13  to distribute five kilograms or more of a mixture or substance

14  containing a detectable amount of cocaine hydrochloride and 50

15  kilograms or more of marijuana, a Schedule 1 controlled

16  substance, all done it alleges in violation of 21 USC Sections

17  841 and 846.

18        Now, it's my understanding that you are pleading guilty

19  to a lesser included offense, that is, conspiracy to possess

20  with intent to distribute a quantity of cocaine.  Is that your

21  understanding, Mr. Withers?

22        MR. WITHERS:  Yes, Your Honor.

23        THE COURT:  And yours as well, Mr. Howard?

24        MR. HOWARD:  Yes, Your Honor.

25        THE COURT:  And that's your understanding as well, Mr.

10

1    Williams?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  In order to convict you of that lesser

4    included offense, the Government would have to prove what are

5    called the essential elements and the essential elements of this

6    particular offense are three-fold.

7         They would have to prove beyond a reasonable doubt first

8    that two or more people in some way agreed to try to accomplish

9    a shared and unlawful plan to possess cocaine; second, that you

10   knew the unlawful purpose of the plan and willfully joined in

11   it; and finally that the object of the unlawful plan was to

12   possess with the intent to distribute a quantity of cocaine.

13        Do you understand those are the essential elements of

14   that offense?

15        THE DEFENDANT:  Yes, ma'am.

16        THE COURT:  And that by pleading guilty you admit that

17   they are satisfied?

18        THE DEFENDANT:  (Nods head).

19        THE COURT:  Now the maximum possible penalty that I

20   could ever impose for that lesser included offense is

21   imprisonment for not more than 20 years, a fine of not more than

22   a million dollars, supervised release of not less than three

23   years and a $100.00 special assessment.

24        Do you understand those are the maximum possible

25   penalties I could impose?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  And Mr. Howard, I note that there was an 851

3     notice.  I understand that because he's pleading guilty to the

4     lesser included offense that that's no longer operational; is

5     that correct?

6          MR. HOWARD:  Correct, Your Honor.

7          THE COURT:  A couple of followup concepts regarding

8     punishment.  That phrase "supervised release" means after any

9     period of federal incarceration, once you're released from

10    prison, you'll have to follow the rules that I set forth for a

11    number of years.

12         Those rules may include but not be limited to a

13    requirement that you get a job, that you not violate any law,

14    that you be subject to certain drug screens and certain

15    searches, and if you were to fail to live up to the terms of

16    supervised release, you could wind up back in prison;

17    understand?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  I also want you to be familiar at least

20    generally with those sentencing guidelines that I mentioned.

21    They are not mandatory; they are advisory, but it is still my

22    duty to calculate that advisory guideline range in your case and

23    to consider that range along with possible departures under the

24    guidelines and then to also consider all the sentencing factors

25    that are in our federal sentencing statute, 18 USC Section 3553.

12

1    After I consider all those things, it will result in me

2  imposing a punishment on you that's either within that guideline

3  range or could be below it; it could be above it.

4    Some of the major factors that go into figuring all that

5  out are your criminal history, your role in the offense, what it

6  was you did and whether you came here and told the truth and

7  accepted responsibility for your actions.

8    Those are some of the major factors that go into it.

9  There's others.  Do you understand all of that?

10    THE DEFENDANT:  Yes, ma'am.

11    THE COURT:  Any questions about any of it?

12    THE DEFENDANT:  No, ma'am.

13    THE COURT:  Has anybody promised you an exact sentence?

14    THE DEFENDANT:  No, ma'am.

15    THE COURT:  That's good because at this point all they

16  can do is give you their best estimate and it wouldn't be

17  binding on me as your sentencing judge; understand?

18    THE DEFENDANT:  Yes, ma'am.

19    THE COURT:  Well, in representing you, Mr. Withers has

20  apparently negotiated with the US Attorney's Office trying to

21  reach a plea agreement in your case.  Did he have your

22  permission to do that?

23    THE DEFENDANT:  Yes, ma'am.

24    THE COURT:  We will take that agreement up.  Mr. Howard,

25  if you will stand and summarize its provisions.

1          MR. HOWARD:  Your Honor, pursuant to the term of the

2    plea agreement, the defendant agrees to plead guilty to Count 1

3    of the superseding indictment and to the factual basis in the

4    plea agreement.  He agrees to abandon any interest in property

5    that may have been seized in connection with this case.

6          He agrees to waive his right to appeal on any ground

7    with three exception that are outlined in the terms of the plea

8    agreement.  He waives his right to collaterally attack his

9    conviction and sentence on any ground with one exception being

10   also outlined in terms of the plea agreement.

11         He waives all rights to request information about the

12   investigation and prosecution of his case under the Freedom of

13   Information Act or the Privacy Act and he waives the protections

14   of Rule 11(f) of the Federal Rules of Criminal Procedure and

15   Rule 410 of the Federal Rules of Evidence.

16         In exchange, the Government and the defendant do offer

17   this plea pursuant to Rule 11(c)(1)(C).  The Government and the

18   defendant agree that a specific sentencing range of 108 to 135

19   months' imprisonment would be appropriate in this case.

20         My signature appears on Page 6 of that plea agreement.

21   If I could offer that agreement to The Court.

22         THE COURT:  And Mr. Withers, is that summary consistent

23   with the agreement that you negotiated?

24         MR. WITHERS:  Yes, it is, Your Honor.

25         THE COURT:  And Mr. Williams, is that summary consistent

14

1    with the agreement that you signed?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And did you read it before you signed it?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Other than the provisions that are contained

6    in that plea agreement, has anybody made you any promises

7    regarding the outcome of your case?

8              THE DEFENDANT:  No, ma'am.

9              THE COURT:  I want to pick back up on two things that

10   Mr. Howard mentioned.  First, that is the appeals waiver that he

11   referenced.  There is a waiver of direct appeal rights contained

12   in the plea agreement you're proposing.  It states, "Defendant

13   entirely waives his right to a direct appeal of his conviction

14   and sentence on any ground."

15             Now, there are three exceptions to that waiver, meaning

16   if but only if one of these three things were to occur would you

17   be able to file a direct appeal pursuant to this agreement:

18   Number 1, if I sentence you above the statutory maximum, you

19   could appeal that directly; Number 2, if I sentence you above

20   the advisory guideline range as found by me, you could appeal

21   that directly; or Number 3, if the Government were to file a

22   direct appeal then you, too, could file one.

23             Otherwise, this plea agreement waives all other direct

24   appellate rights; understand?

25             THE DEFENDANT:  Yes, ma'am.

15

1        THE COURT:  Any questions about that waiver?

2        THE DEFENDANT:  No, ma'am.

3        THE COURT:  Also contained in the agreement is a waiver

4   of certain collateral attack rights.  It states, "Defendant

5   entirely waives his right to collaterally attack his conviction

6   and sentence on any ground and by any method including but not

7   limited to a 28 USC Section 2255 motion."

8        Now there is an exception to that waiver and that is

9   pursuant to this agreement, you retain the right to collaterally

10  attack based on a claim of ineffective assistance of counsel;

11  understand?

12       THE DEFENDANT:  Yes, ma'am.

13       THE COURT:  Any questions regarding that waiver?

14       THE DEFENDANT:  No, ma'am.

15       THE COURT:  I also want to pick back up on what Mr.

16  Howard mentioned with regard to what is called the 11(c)(1)(C)

17  nature of the plea agreement.

18       What that means is that your attorney and the

19  Government's attorney agree that a specific sentencing range is

20  appropriate.

21       In your case, they have agreed that a sentencing range

22  of 108 to 135 months imprisonment would be appropriate in your

23  case.

24       If I accept this plea agreement, I will be bound to

25  sentence you within that range, a low of 108 months in prison, a

16

1    high of 135 months in prison as far as your advisory guideline

2    range; understand?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Any questions about that?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT:  Well, Mr. Withers, as an officer of the

7    court, are you aware of any impropriety on the part of the

8    Government in handling Mr. Williams' case?

9              MR. WITHERS:  I am not, Your Honor.

10             THE COURT:  And Mr. Howard, are you aware of any

11   impropriety on anyone's part in handling this case?

12             MR. HOWARD:  No, Your Honor.

13             THE COURT:  Mr. Williams, do you still want to plead

14   guilty to the lesser included offense of Count 1?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Do you want to plead guilty to that lesser

17   included offense because you are, in fact, guilty of it?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  You understand the rights and the privileges

20   that you waive or give up if I accept your plea?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Let the record reflect that Mr. Herman

23   Williams is 44 years old.  He's married and has two grown

24   children.  He was born in Savannah and was living in Conyers at

25   the time of the arrest.  He's a high school graduate and went on

17

1    to get his associate's degree.  He manages a seafood restaurant.

2    He's not laboring under any disabilities.  He does take high

3    blood pressure medication.  He's not under the influence of any

4    drugs or alcohol.  He's had the services of an excellent defense

5    lawyer.

6           I've watched Mr. Williams as he's interacted with me

7    this afternoon in court.  He's participated intelligently.  I

8    find that his offer to plead guilty to the lesser included

9    offense of Count 1 is knowing.  I also find that it's voluntary;

10   is that correct, Mr. Williams?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Therefore, I will approve of the plea

13   agreement.  I'll call on Mr. Howard for a factual basis and you

14   two may have a seat while he does so.

15          MR. HOWARD:  The Government calls DEA TFO Kevin Jarriel.

16                         HERMAN WILLIAMS,

17   having been first duly sworn, was examined and testified as

18   follows:

19          THE CLERK:  Thank you.  Please be seated.  And if you

20   will please state your full name, spell your last, your

21   occupation and your business address.

22          THE WITNESS:  My name is Kevin Jarriel, last name

23   J-a-r-r-i-e-l.  TFO with the DEA in Savannah, Georgia.

24                         DIRECT EXAMINATION

25   BY MR. HOWARD:

18

1   Q.    What's your business address?

2   A.    Oh, I'm sorry.  56 Park of Commerce Boulevard in Savannah,

3   Georgia.

4   Q.    Are you familiar with the case involving Herman Williams?

5   A.    Yes, sir.

6   Q.    Did this case involve the investigation of a

7   drug-trafficking organization who obtained cocaine from Texas?

8   A.    It did.

9   Q.    Did this investigation involve the use of multiple

10  wiretaps and other investigative devices?

11  A.    Yes, sir, that's correct.

12  Q.    Did a review of flight and hotel records reveal that

13  Herman Williams and Omar Griffin traveled from Georgia to

14  Houston, Texas at several different times in late 2017 and early

15  2018?

16  A.    That is correct.

17  Q.    In conversations with a cooperating defendant, have you

18  learned that during these trips to Houston, Mr. Williams and

19  Mr. Griffin met with a supplier of cocaine?

20  A.    That is correct.

21  Q.    Did you also learn that arrangements were made to have

22  cocaine shipped from Texas to Georgia?

23  A.    Yes, sir, we did.

24  Q.    Were phone calls intercepted between Omar Griffin and

25  Herman Williams discussing these arrangements?

19

1   A.    Yes, sir.

2   Q.    Were there also phone calls intercepted between Mr.

3   Griffin and the Texas supplier of cocaine?

4   A.    Yes.

5   Q.    On March 4th to 5th, 2018, was a shipment of 25 kilograms

6   of cocaine transported from Texas to Richmond Hill, Georgia?

7   A.    It was.

8   Q.    Did physical surveillance show Mr. Williams and Mr.

9   Griffin meeting in a hotel in Richmond Hill with a source of

10  supply on those dates?

11  A.    That's correct, sir.

12  Q.    Was nearly $400,000.00 in cash provided to that supplier

13  in exchange for the cocaine?

14  A.    Yes.

15  Q.    On March 5th, was the cocaine loaded into Omar Griffin's

16  vehicle that was then to be driven by another coconspirator to

17  19 Helmken Street here in Savannah?

18  A.    Yes, sir, it was.

19  Q.    Did Herman Williams and Omar Griffin then travel to that

20  Helmken Street address?

21  A.    They did.

22  Q.    Did law enforcement attempt to stop Mr. Williams while he

23  was driving?

24  A.    We did try, yes, sir.

25  Q.    Did he flee?

20

1   A.    He did.

2   Q.    Was he captured by police after fleeing?

3   A.    Shortly after, yes, sir.

4         MR. HOWARD:  No further questions for this witness, Your

5   Honor.

6         THE COURT:  Mr. Withers, any questions?

7         MR. WITHERS:  No, Your Honor.

8         THE COURT:  No questions?

9         MR. WITHERS:  No questions.

10         THE COURT:  Then you may step down.

11         THE WITNESS:  Thank you, Judge.

12         THE COURT:  Mr. Withers, reapproach with your client,

13   Mr. Williams.  Mr. Williams, do you dispute any of the testimony

14   given by the task force officer in your case this afternoon?

15         THE DEFENDANT:  No, ma'am.

16         THE COURT:  Do you admit the truth of his testimony?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Based on the record made at this proceeding,

19   I'm satisfied there's a factual basis for a plea of guilty to

20   the lesser included offense of Count 1.  Let it be entered.

21         THE CLERK:  Plea of guilty has been entered, Your Honor.

22         THE COURT:  The plea of guilty is accepted and I now

23   adjudge you guilty of the lesser included offense of Count 1.

24   The probation officer will conduct a presentence investigation,

25   and she will issue a report and disclose that report to the

21

1    Defense and to the Government and will thereafter schedule your

2    sentencing hearing.

3            Mr. Williams, I will remand you back to the custody of

4    the US Marshal, and, Mr. Withers, you may be excused.

5            MR. WITHERS:  Thank you, Your Honor.

6            (Proceeding concluded at 1:35 p.m.)

7

8                          CERTIFICATION

9

10           I certify that the foregoing is a true and correct

11   transcript of the stenographic record of the above-mentioned

12   matter.

13

14

16   _____        07/31/2019

17   Debra Gilbert, Court Reporter          Date

18

19

20

21

22

23

24

25