1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA        )
                                )
     vs.                        )
                                ) CASE NO.
HERMAN WILLIAMS,                ) 4:18-CR-00147-LGW-CLR
                                )
_____Defendant._____)

SENTENCING HEARING
BEFORE THE HONORABLE LISA GODBEY WOOD
October 30, 2019; 11:04 a.m.
Savannah, Georgia

APPEARANCES:

For the Government:         CHRISTOPHER HOWARD, Esq.
                            U. S. Attorney's Office
                            22 Barnard Street
                            Suite 300
                            Savannah, Georgia  31412
                            (912) 652-4422
                            christopher.howard@usdoj.gov

For the Defendant:          THOMAS A. WITHERS, Esq.
                            Gillen, Withers & Lake, LLC
                            8 East Liberty Street
                            Savannah, Georgia  31401
                            (912) 447-8400
                            twithers@gwllawfirm.com

Reported by:                Debbie Gilbert, RPR, CCR
                            Official Court Reporter
                            801 Gloucester Street
                            Post Office Box 1894
                            Brunswick, GA 31521-1894
                            (912) 262-2608 or (912) 266-6006
                            debra_gilbert@gas.uscourts.gov
                             - - -

2

P R O C E E D I N G S

(Call to order at 11:03 a.m.)

THE COURT: Ms. Sharp, call the next case.

THE CLERK: United States of America versus Herman Williams, Chris Howard for the Government, Tom Withers for the Defense.

MR. HOWARD: Government is ready to proceed.

MR. WITHERS: Ready for Defense, Your Honor.

THE COURT: Mr. Withers, if you will approach with your client, Mr. Herman Williams, and as you approach, let me state I did receive the sentencing memorandum that was filed on behalf of the defendant by Mr. Withers and it had several letters and pictures attached to it, and I did have the opportunity to read that memorandum, look at all the pictures and read all of the letters in preparation for the hearing.

We did receive a video clip and I have not been able to see that. Ms. Sharp tells me that she can play it here during the hearing so we will do that because I do want to take that in as well, and we will do so as we go along at the appropriate time.

That said, Mr. Williams, you appeared before me on May 31st, 2019, accompanied by your attorney, Mr. Withers, for your Rule 11 proceeding.

Pursuant to a plea agreement, you pled guilty and were adjudged guilty of Count 1 of the superseding indictment

3

charging you with conspiracy to possess with intent to distribute and to distribute a quantity of cocaine in violation of 21 USC Section 846.

Now at the end of that Rule 11 proceeding and my acceptance of your guilty plea, I directed the probation office to prepare a presentence report and to disclose that report to the Defense and to the Government.

Now, Mr. Williams, have you had the opportunity to read and review that report and its brief addendum and discuss it with Mr. Withers?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are there any objections that remain to either the probation officer's factual statements contained in that report or to his application of the advisory sentencing guidelines, any objections?

MR. WITHERS: Your Honor, we do have two objections with respect to Paragraphs 19 and 20. And with respect to Paragraph 19, it indicates that that phone that's identified in Paragraph 20, last four digits of 6677, was Mr. Williams' cellular telephone and that that phone did, Paragraph 20, exchange text messages with Rodrigo Rodriguez.

Mr. Williams denies that that phone was his phone and denies that he sent a text message to Mr. Rodriguez in the Spanish language as set forth there.

THE COURT: In that case, we may be here for no purpose.

4

1  I understood from the August 30th, 2019 addendum to the
2  presentence report that there were no objections.
3       MR. WITHERS:  Your Honor, that's right.  In going back
4  over the PSI with Mr. Williams after that, he did tell me that
5  he wanted to -- that he denied that that phone was his and that
6  he wanted to object to those two paragraphs.
7       THE COURT:  Mr. Howard, what is the Government's
8  position regarding this new information?
9       MR. HOWARD:  Your Honor, I guess I note a couple of
10 things:  One, it's not going to affect his range.  I think this
11 is something that The Court need not necessarily determine, and
12 I don't want to kind of kick the can down the road and reset it
13 for something, for an objection that is not outcome
14 determinative.
15      You know, we sort of will concede that someone was not
16 monitoring Mr. Williams physically during the exchange or text
17 messages.  We certainly have circumstantial evidence linking
18 that phone to Mr. Williams; however, I don't want that to be a
19 barrier to proceeding with the sentencing today.
20      THE COURT:  So if I were to sustain that objection, it's
21 your position that changes nothing?
22      MR. HOWARD:  Correct, Your Honor.
23      MR. WITHERS:  Your Honor, just to be fair, I did meet
24 with Mr. Williams both Thursday and Sunday, and when I got this
25 information, I e-mailed Mr. Howard and Mr. Bragg yesterday

5

1  morning.  I think it was yesterday morning.
2          THE COURT:  And we may be able to note in a footnote to
3  Paragraph 20 that Mr. Williams denies that that 6677 number is
4  his?
5          MR. WITHERS:  Yes, Your Honor.  I think that would be
6  sufficient.
7          THE COURT:  Would that satisfy -- all right, and then I
8  will sustain your objection in that regard and add to the report
9  as it's presently stated a notation to Paragraph 20 that Mr.
10 Williams denies that that number is his.  Is that what you're
11 seeking, Mr. Withers?
12         MR. WITHERS:  Yes, Your Honor.
13         THE COURT:  Any objection to that?
14         MR. HOWARD:  No, Your Honor.
15         THE COURT:  Then the report will be amended to include
16 that footnote.  Aside from that objection, which I sustained by
17 including the footnote, are there any other objections?
18         MR. WITHERS:  No, Your Honor.
19         THE COURT:  On behalf of the Government, any objections?
20         MR. HOWARD:  No, Your Honor.
21         THE COURT:  There being no objections other than the one
22 that we've handled to the factual statements contained in that
23 report, I'll adopt those facts as my findings of fact, and there
24 being no objections from anyone with regard to the application
25 of the advisory guidelines as contained in the report, I'll

6

1  adopt those conclusions as my own and therefore determine in Mr.
2  Herman Williams' case a total offense level of 29, a criminal
3  history category of 3.  Advisory guideline range for
4  imprisonment 108 to 135 months, and I will note that was
5  pursuant to an 11(c)(1)(C) --
6        MR. WITHERS:  Yes, Your Honor.
7        THE COURT:  -- plea agreement.  Three years' supervised
8  release, 30,000- to one-million-dollar fine.  Restitution does
9  not apply and there's a $100.00 special assessment.  As to Count
10 1, there is no minimum term of imprisonment required.  There's a
11 maximum term of 20 years.
12        Now, Mr. Withers, before I turn to the Government and
13 then ultimately to Mr. Williams himself, are there any witnesses
14 you'd like to call, evidence you'd like to bring forth or
15 argument you would like to make in mitigation?
16        MR. WITHERS:  Just argument, Your Honor.  We've
17 submitted the letters and we tried to be careful with those.
18        THE COURT:  And I do want to take the time to review
19 that video clip that you sent.
20        MR. WITHERS:  Okay.
21        THE COURT:  Ms. Sharp, if you will, could you queue that
22 up.
23        THE CLERK:  Hold on, Judge.
24        So it appears this courtroom is a little bit different.
25 My PC will not display those.  It's a little bit different than

7

1  ours at home, but I have it that you can see on my Surface.
2         THE COURT:  Let me see and the Government has seen this?
3         MR. HOWARD:  We have access to it, Your Honor.
4         THE COURT:  All right.
5         (Video played.)
6         THE COURT:  Is this his father?
7         MR. WITHERS:  Yes, Your Honor.
8         THE COURT:  And this is his mother in the water?
9         MR. WITHERS:  And his father as well in the water.
10        THE COURT:  His father?
11        MR. WITHERS:  Yes.
12        THE COURT:  And the father again.
13        MR. WITHERS:  Yes, Your Honor.
14        (Video played.)
15        THE COURT:  All right, and I did have the opportunity to
16 review that video.
17        MR. WITHERS:  Thank you, Your Honor.
18        THE COURT:  And with that, Mr. Withers, any argument you
19 would like to make?
20        MR. WITHERS:  Yes, Your Honor.  Herman Williams knows
21 that he is going to be punished today, knows that any sentence
22 he receives in the context of this case, 108 to 135, is a
23 substantial sentence, and he understands that part of that is
24 driven by the fact that he is a now thrice-convicted felon in
25 federal court, quite frankly, I think the only time I've ever

8

1  seen someone who has three prior -- three felony convictions.
2           That said, I do -- I would like to spend just a minute
3  putting Herman's conduct in this case in a little framework and
4  that is in early March, Agent Jarriel with CNT submitted an
5  affidavit to the Superior Court, and in that affidavit, he said
6  that as of yet the only persons, people in the conspiracy that
7  could be charged were Miller, Griffin, Omar Griffin, and Grady.
8           Obviously, Herman shows up at the motel in Richmond Hill
9  on March 4 and March 5.  Lightning doesn't strike twice, and he
10 has entered his sentence and knows he's here today for judgment
11 day.
12          But that said, there are no phone calls between he and
13 the source of supply, Rodriguez, who I think got an 84-month
14 sentence.
15          THE COURT:  He did.
16          MR. WITHERS:  And no evidence that --
17          THE COURT:  But he has a significant 5K1 --
18          MR. WITHERS:  I understand that.  And no evidence that
19 Herman had a distribution network, as it were; in other words,
20 his contact with the 13 other coconspirators, I think, was Omar
21 Griffin, who remains a fugitive, so all that said, Herman's
22 deeply remorseful and it's interesting that in the letters that
23 have been submitted -- and any testimony that we submitted, Your
24 Honor, would be cumulative of those letters and so we just want
25 to be mindful of that with respect to The Court, but

1  interestingly, in those letters, you hear the theme that Herman
2  is deeply remorseful and, you know, truly is sorrowful not only
3  for his conduct, but for what he has done to the family and
4  friends and his community and particularly with respect to his
5  family, and he bears a well-earned shame as a result of that and
6  it's hard to believe that he feels that so deeply since he's
7  been here before.
8        So that said, what comes through in the letters and in
9  that video as well, Herman was deeply devoted to his parents.
10 His parents had Herman when they were elderly, in their forties
11 and at Age 50, and Herman was a deeply devoted to his parents
12 and believed in that old Psalm that talks about "Cast me not off
13 in my old age," and so he was committed to taking care of a
14 mother and father with dementia and Alzheimer's, which can be
15 terrible and it can be terrible for a period of years, but what
16 you see in those letters is that Herman bathed his parents.  He
17 cleaned his parents.  He cooked for his parents.  He cleaned up
18 the house for his parents.
19        And not only that, but that Herman cared for his
20 community as well, that he served people in the community not
21 only by doing things, simple things like cutting somebody's
22 yard, but supporting youth athletic programs, so here's the
23 thing.
24        I've known Herman for ten years now.  I've known many
25 members of his family for that period of time.  How does that

1 person that's described in those letters, how does that person
2 end up standing before a United States District Court judge for
3 the third time for the imposition of sentence?
4     I don't have an answer.  I don't have an answer.  Herman
5 and I have spent an enormous amount of time on this case, an
6 enormous amount of time together.
7     I don't have an answer because there's such a serious
8 disconnect there.  But the only thing I can come up with is
9 somebody who makes bad decisions and has bad judgment in the
10 extreme.
11     I would ask you, though, Your Honor, to consider that
12 one of those prior convictions was for 9.9 grams of marijuana,
13 2010, which becomes a felony because of his prior conviction
14 from the late 1990's, that that turns that gram quantity of
15 marijuana into a federal felony drug conviction.
16     So we would ask for a sentence at the lower end of the
17 agreed-upon range, Your Honor, and I know the prosecution is
18 going to stand up and echo some of the things that I've said
19 about the now three convictions.  25 kilos of cocaine, by any
20 stretch of the imagination, wherever you are in the United
21 States, an enormous amount of cocaine, but Herman has accepted
22 responsibility, and one of the things that I hear this Court
23 echo in its sentencings is, you know, that sentencing is the
24 time where the good is weighed with the bad, and while this is
25 clearly bad, bad in the extreme, we also have the

11

1  characteristics of Herman that shine through of a kind, caring,
2  decent person.
3        Now, we would ask for a designation of Marianna if he
4  qualifies to the extent possible.  Herman was arrested on March
5  5 of 2018, originally on state charges.  Federal charges were
6  taken over or were filed in June.
7        We would ask that he receive credit for that three-month
8  period of time.  I don't know that the -- if The Court can do
9  anything about that, but I think consistent with the way these
10 cases have been handled in the state system, generally those
11 cases are nolle pros'd after the sentencing.
12       We would ask -- it's important for Herman to ask -- and
13 again, I don't know if this can be made part of the judgment --
14 that any supervised release be served in the Northern District
15 of Georgia where his wife lives and where he was living at the
16 time, and with that, Your Honor, we are grateful for The Court's
17 consideration and thank you.
18       THE COURT:  Thank you, Mr. Withers.  Turning to the
19 Government, Mr. Howard.
20       MR. HOWARD:  Thank you, Your Honor.
21       I think that counsel asked the question that he's not
22 sure why he does this.  I think the answer is quite simple.  Mr.
23 Williams continues to engage in drug trafficking because the
24 money and his desire for that money outweighs his fear of a
25 prison sentence.

12

1       He makes a decision, continually, time after time,
2  decade after decade, to engage in drug trafficking because of
3  money, and I think that when we look at fashioning an
4  appropriate sentence, what Mr. Withers is asking for is a
5  sentence less than what he got in 1998 for a significantly fewer
6  quantity of narcotics, and I think there is great concern
7  certainly from the Government when you're talking about someone
8  who has escalated the seriousness of their offense in drug
9  trafficking for their sentence to be reduced.  I don't think
10 that makes sense.  I think as you continue to engage in criminal
11 conduct, as you continue to engage in more serious criminal
12 conduct, the sentence should reflect that, which is why we're
13 asking for a sentence of 135 months.
14      When we talk about the seriousness of the offense,
15 obviously the quantity of the narcotics, but it's also important
16 to echo the fact that Omar Griffin is a fugitive and as a direct
17 result partially because of Herman Williams' actions because, on
18 the day of Herman Williams' arrest, he fled from the police
19 driving at high speeds through the streets of Savannah in a
20 vehicle with Omar Griffin as a passenger, and when Mr. Williams
21 eventually came to stop, the agent there was sort of put on an
22 island where he had two fleeing individuals and he had to choose
23 which one to apprehend.
24      He apprehended Mr. Williams.  Mr. Griffin then took that
25 agent's car and engaged in a high-speed chase and was able to

1 escape and today remains a fugitive again because of actions
2 that Mr. Williams took, so I think that that should be accounted
3 for when we talk about the seriousness of the offense, and both
4 in counsel's sentencing memorandum and again today, he again
5 brings up Mr. Rodriguez, and I think it's an apt comparison when
6 you look at both individuals are sort of at the upper echelon
7 when we talk about the actors in the overall conspiracy and
8 culpability.
9      I think they both should be considered at that kind of
10 top tier. I think the comparison stops there. When you look at
11 comparing criminal histories and particularly when you compare
12 their postarrest and post-indictment conduct, which has been
13 reflected as Your Honor as already noted in that substantial
14 assistance that he's provided.
15      So given the seriousness of the offense, given Mr.
16 Williams' history, we are asking for a sentence of 135 months,
17 Your Honor.
18      THE COURT: Mr. Williams, it's your opportunity to
19 address me last. Is there anything you would like to say?
20      THE DEFENDANT: Yes, ma'am. All praises due to God.
21      I seek refuge in God from the evil of myself and my bad
22 deeds and actions. I accept full responsibility for those
23 actions and for bringing a hardship upon my family and the
24 community.
25      Like Mr. Withers said, I made some bad mistakes. I made

14

some bad decisions in my life, throughout my life, you know.  I paid debt for those decisions as well and I'm fixing to face another time where I have to pay debt for it, but deep within my heart, I'm a good, caring person.  You know, I cared for my mother.  I cared for the elderly.  I cared for homeless.  I cared for orphans.  I cared for the children, and I don't just do -- I don't do these things with monetary gains.  I do these things from the kindness of my heart with action, you know, and I -- you know, again, I apologize for my actions, and I accept full responsibility for it.  But it's not of me.  It's of my lower self.  You know, I'm -- I'm bringing on a hardship on my family.  I'm bringing on a hardship on my wife.  It's a hardship by me not being there helping, and I just ask that, you know, you show leniency and help me get back to those things more sooner than later.

That's it.  Thank you.

THE COURT:  All right.  Well, I have studied your case and the presentence report and the memo that was filed, all the letters I received, the video, listened to what both attorneys said, to what Mr. Williams himself has said and thought about all the 3553 factors that I'm obligated to consider, and, Mr. Williams, you have been in this situation before in federal court, and you know it's the judge's duty to look at the good and the bad as Mr. Withers says in your background and take both those sides of equation into consideration in fashioning a

15

1  sentence that's neither too harsh nor too lenient given who you
2  are and what you've done.  You know better than any of us what
3  you've done, and it's set forth pretty clearly in the record.
4          On the good side, we've got you caring for your elderly
5  parents and doing so wholeheartedly, completely.  You've got
6  something most people that appear before me don't have and that
7  is a courtroom full of people who support them and love them and
8  need them to be something else besides a three-time drug
9  offender in an orange jumpsuit at a podium.
10         It's obvious from the letters you have talents, and they
11 need you.  And now a third time you're willing to throw it all
12 away to make some money illegally.
13         On the bad side is this is your third federal
14 conviction.  The amount of drugs escalates.  25 kilos of cocaine
15 borders on astonishing.  Both you and the prosecution have
16 agreed that the window of appropriate punishment is between 108
17 and 135 months.  Both sides agree it's that window, and so
18 that's what I'm weighing, looking at the good and the bad,
19 looking at you as a person and your history.
20         In consideration of all of that, it is the judgment of
21 The Court that the defendant, Mr. Herman Williams, is hereby
22 committed to the custody of the Bureau of Prisons to be in
23 prison for a term of 132 months.
24         There is no reason to vary or depart from the sentence
25 called for by application of the advisory guidelines.  And I do

16

1   agree with counsel for both sides and with the defendant that
2   132 months as being within that range is appropriate, and in The
3   Court's judgment, after reviewing the 3553 factors and all the
4   other considerations I've outlined, that 132 months is the
5   appropriate part for that narrow continuum.
6            I did impose a sentence with the Rule 11(c)(1)(C) plea
7   agreement.
8            This defendant does not have the ability to pay a fine,
9   so I'm not going to order that one be imposed.  There is a
10  $100.00 mandatory special assessment, which is due immediately.
11           Pursuant to the plea agreement, Mr. Williams will
12  forfeit his interest in any property that may have been seized
13  in connection with the case.
14           Now, Mr. Williams, upon release from imprisonment,
15  you're going to be on supervised release for three years and
16  that's really when you show your family and your friends, the
17  people who need you, whether you've set this criminal conduct
18  aside and are going to pick them, pick being with them over
19  engaging in criminal conduct that leads you three times right
20  here.
21           During the three years of supervised release, you will
22  comply with the mandatory conditions of supervision required by
23  federal law, the standard conditions that are imposed by The
24  Court.  That will include cooperation in the collection of a DNA
25  sample as directed by Probation.  Recall that as a convicted

17

1  felon you're never to possess a firearm.
2          During the three years of supervised release you're not
3  to possess any kind of dangerous weapon.
4          I've determined based on the facts of the case that
5  certain special conditions are in order even with the
6  understanding that they do entail some measure of deprivation of
7  liberty.
8          They are nevertheless in order based on the specific
9  facts of this case.  Those will include substance abuse testing
10 and a specific direction not to tamper with the testing devices.
11 You will be subject to certain searches as directed by Probation
12 but only based on a reasonable suspicion of a violation of one
13 of these terms and only conducted at a reasonable time and in a
14 reasonable manner.
15         The probation officer is hereby directed to provide Mr.
16 Williams with a written set of instructions that governs all the
17 terms of his supervised release.  I did accept the 11(c)(1)(C)
18 binding plea for an advisory guideline range of 108 to 135
19 months because I am adequately satisfied that it reflects the
20 seriousness of the offense behavior without in any way
21 undermining the statutory purposes of sentencing.
22         I recommend to the Bureau of Prisons that Mr. Williams
23 be placed in the Marianna FCI so as to be close to his south
24 Georgia family.  I do recommend that he receive credit for the
25 time that he has served thus far.  I have no objection to the

18

1  Bureau of Prisons crediting him with the time from March 5th,
2  2018 until June 21st, 2018 when he was placed in federal
3  custody.
4       The three-year supervised release period may, in fact,
5  be served in the Northern District of Georgia provided the
6  Northern District accepts that for supervision.
7       Pursuant to the plea agreement that I did accept, he has
8  waived his direct appeal rights absent the three exceptions that
9  are specifically set forth in that plea agreement.  Pursuant to
10 that plea agreement, he waived his collateral attack rights
11 absent the one exception that is set forth in that plea
12 agreement.
13      Well, sentence has now been pronounced.  Other than any
14 objections which could have been made, do you now have any
15 objections to my findings of fact, my conclusions of law, or to
16 the manner in which sentence was pronounced, Mr. Withers?
17      MR. WITHERS:  No, Your Honor.
18      THE COURT:  And Mr. Howard?
19      MR. HOWARD:  No, Your Honor.
20      THE COURT:  Mr. Williams, I will remand you back to the
21 custody of the US Marshal.  Don't let there be a fourth
22 violation; understand?
23      THE DEFENDANT:  Yes, ma'am.
24      THE COURT:  And Mr. Withers, you may be excused.
25      MR. WITHERS:  Thank you, Your Honor.

1      THE COURT:  And you as well, Mr. Howard, unless you have the next case.

(Proceeding concluded at 11:35 a.m.)

CERTIFICATION

I certify that the foregoing is a true and correct transcript of the stenographic record of the above-mentioned matter.

*Debra D Gilbert*

_____     07/06/2020
Debra Gilbert, Court Reporter           Date